UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| THE SCOTTS COMPANY, LLC, |
| Plaintiff, |
| v. |
| PENNINGTON SEED, INC., |
| Defendant. |
| PENNINGTON SEED, INC, |
| Plaintiff, |
| v. |
| THE SCOTTS MIRACLE-GRO COMPANY, INC., and THE SCOTTS COMPANY, LLC, |
| Defendants. |

Civil Action No. 3:12–CV–168

## MEMORANDUM OPINION

THIS MATTER is before the Court on motions for preliminary injunctions and a motion to strike.[1] (Civil Action No. 3:12–CV–168, ECF Nos. 68, 78; Civil Action No. 3:12–CV–254, ECF Nos. 39, 49.) In these cases, the parties, The Scotts Company, LLC and The Scotts Miracle-Gro Company, Inc. (collectively, "Scotts") and Pennington Seed, Inc. ("Pennington"), ask the Court to enjoin advertising that each side claims is false and damaging, in violation of federal and state laws governing unfair competition.

---

[1] The motions for preliminary injunction and motion to strike in these cases were heard by the Honorable James R. Spencer, District Judge. Having reviewed the record, the undersigned will rule on those motions.

The motions are DENIED.[2] The Court denies Scotts' motion for a preliminary injunction because Scotts 1) has not shown that it is likely to prevail on the merits, 2) has not shown irreparable harm, 3) has not shown that the balance of equities tips in its favor, and 4) has not shown that the public interest demands preliminary equitable relief.

Pennington's claim fails because it has failed to show that Scotts' advertising is false, an essential element of success on the merits in these cases. Given this conclusion, the Court cannot conclude that Pennington will suffer irreparable harm, that the balance of equities tips in Pennington's favor, and that preliminary injunctive relief serves the public interest. Pennington's motions to strike were denied at the evidentiary hearing, and that ruling is confirmed at this time.

I. PROCEDURAL BACKGROUND

Scotts and Pennington distribute, market, and sell grass seed and plant food products, and compete in the lawn and garden market. Various nationwide retailers typically sell both companies' products and display them side-by-side in their garden departments. Relevant here, the peak season for selling grass seed products is relatively brief, usually lasting only about twelve weeks beginning in the spring.

The instant cases involve disputes between Scotts and Pennington with respect to advertising claims made by the companies. On March 2, 2012, Scotts[3] sued Pennington alleging claims of false advertising under the Lanham Act and state law, and common law unfair competition. On March 8, 2012, Scotts filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction to enjoin allegedly false advertising claims by Pennington

---

[2] The Court denied the motions by Order on November 9, 2012. In this opinion, the Court explains the rationale for its decision.
[3] The Scotts Company, LLC is a party to both cases, but The Scotts Miracle-Gro Company, Inc., is a party only to Civil Action No. 3:12–CV–254.

2

that Pennington's Smart Seed grass seed products contain "twice the seed" as Scotts' Turf Builder grass seed products.

On March 13, 2012, Pennington filed its opposition to Scotts' TRO and preliminary injunction motion along with a motion to dismiss and transfer venue. On March 29, 2012, the Court granted Pennington's motion to dismiss finding the "twice the seed" claims at issue to be covered under the terms of a confidential settlement agreement previously entered into by the parties. Under the agreement, the parties were subject to mandatory alternative dispute resolution before action could be filed on those claims. Hence, the Court denied as moot Scotts' TRO and preliminary injunction motion. The Court also denied Pennington's request to transfer the case to the United States District Court for the Northern District of Georgia.

Meanwhile, on March 16, 2012, Pennington sued Scotts in the Northern District of Georgia (hereinafter the "Georgia court") alleging claims of false advertising under the Lanham Act and state law, common law unfair competition, and violation of the Georgia Uniform Deceptive Trade Practices Act. On March 21, 2012, Pennington moved for a temporary restraining order and preliminary injunction in the Georgia court with regard to certain advertising by Scotts.

On April 4, 2012, the Georgia court denied Pennington's TRO request and transferred the case to this Court. In doing so, the Georgia court also deferred ruling on Pennington's preliminary injunction request. On April 9, 2012, Pennington moved for a Preliminary Injunction in this Court asking the Court to enjoin advertisements by Scotts describing Pennington's 1 Step Complete combination grass seed products as "a bunch of ground-up paper"

3

and making certain superiority claims with respect to Scotts' EZ Seed and Pennington's 1 Step Complete products.[4]

On April 24, 2012, having completed the required alternative dispute resolution procedure, Scotts again moved for a preliminary injunction against Pennington's advertising. Scotts' new motion expanded its initial request for injunctive relief by asking the Court to also enjoin Pennington's "twice the seed" claims with respect Scotts' EZ Seed combination grass seed products and Pennington's 1 Step Complete combination grass seed products.

On May 14, 2012, the Court heard evidence on the parties' motions for preliminary injunction. After the hearing, the parties filed briefs in support of their positions.

## II. <u>LEGAL STANDARD</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). The party seeking a preliminary injunction must establish that: (1) the party is likely to succeed on the merits; (2) the party is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the party's favor; and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20; *see also Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reinstated in part by* 607 F.3d 355 (4th Cir. 2010). The party seeking a preliminary injunction must satisfy all four requirements for an injunction to issue. *Real Truth About Obama, Inc.*, 575 F.3d at 346.

---

[4] The same claims were at issue in Pennington's TRO and preliminary injunction filed in the Georgia court.

4

### III. SCOTTS' MOTION FOR A PRELIMINARY INJUNCTION

#### 1. Factual Background

Scotts' Turf Builder grass seed products and EZ Seed combination grass seed products directly compete with Pennington's Smart Seed products[5] and 1 Step Complete combination grass seed products, respectively. Scotts attacks two of Pennington's promotional campaigns. In one campaign, which ran at the peak of the grass seed selling season, Pennington redesigned the bags for its Smart Seed grass seed products, launched online advertising, and created display trays—all claiming to some extent that Pennington's Smart Seed products offer "twice the seed" compared to Scotts' Turf Builder products.[6] Pennington also touted on its website: "more seed means more plants . . . And more plants means a thicker, more beautiful lawn." (Scotts' TRO & Prelim. Inj. Mem. 7.)

In a second campaign, Pennington launched a television commercial in which it claimed that its 1 Step Complete contains "twice as much seed" compared to Scotts' EZ Seed products. The script for the television ad reads as follows:

> If you're looking to take care of the problem areas in your grass . . .
> You should know that all patch products are not created equal.

---

[5] Pennington clarifies that its Smart Seed products directly compete with Scotts' <u>coated</u> Turf Builder products, stating that "Scotts' uncoated Turf Builder varieties occupy a small market share for grass seed products and are targeted toward different purchasers." (Pennington's Opp'n 7 (extraneous symbol omitted).) Importantly, Scotts' coating (or "filler") applied to coated Turf Builder grass seed accounts for half the seed's weight.

[6] The specific advertisements at issue by Pennington with respect to Scotts' Turf Builder and Pennington's Smart Seed include: (1) packaging for Pennington's Smart Seed grass seed products which that "NO FILLER! TWICE THE SEED! COMPARED TO COATED SEED PRODUCTS"; (2) retail display trays that read, "NO FILLER! TWICE THE SEED vs. SCOTTS TURF BUILDER"; (3) retail headlines and displays that read, "2X the seed vs. other combination products"; (4) banners on Pennington's home page that read, "All Seed. No Filler. Twice as much seed as a bag of Scotts: It's right there on the label" and "Twice as much seed as Scotts EZ Seed, and the results speak for themselves: Problem areas are not the place to spread the seed thin," (5) and an advertisement from the Dictionary.com webpage (May 2011), which read, "2X MORE SEEDS VERSUS THE COMPETITION."

5

> We're Pennington. The grass seed people.
> And we're proud to tell you the truth about our Pennington 1 Step.
> *We put in twice as much seed compared to their EZ SEED,* we use a
> better mulch, and, well, look at the difference.
> I guess we believe in getting to the root of the problem. Don't you?
> Pennington 1 Step. Honest Green.

(Scotts' Mem. Supp. Renewed & Expanded Mot. Prelim. Inj. ("Scotts' Mem. Supp.") 7.) Scotts emphasizes:

> The video images at the time of the statement "we put in twice as much seed compared to their EZ SEED" depict a person's hand scooping out a handful of seeds from a large container. As the narrator says this false statement, the hand is allowing the seeds to cascade out through the fingers back into the container.

(Scotts' Mem. Supp. 7.) Pennington also used this strategy on display bins and other signage in retail stores, and in a sliding headline banner on Pennington's website.[7] (Scotts' Mem. Supp. 7.) Scotts contends that Pennington's advertisements claiming to have "twice the seed" or "twice as many seeds" as Scotts' products are literally false and misleading, and are likely to cause Scotts' irreparable harm. Scotts, therefore, requests that the Court enjoin such claims.

At least some of Pennington's advertisements and promotions became public more than a year before Scotts filed suit. Scotts has not explained the delay in protecting its rights.

## 2. Discussion

Scotts argues that each of the preliminary injunction factors weighs overwhelmingly in its favor, thereby warranting injunctive relief. Pennington counters that Scotts has failed to satisfy the preliminary injunction factors. Moreover, Pennington argues that Scotts' requested injunctive relief is barred by Scotts' delay in bringing the action.

---

[7] The in-store displays for Pennington's 1 Step Complete include headlines that read, "2x the seed vs. other combination products: Deep, healthy roots." The online banner reads, "Twice as much seed as Scotts EZ Seed, and the results speak for themselves: Problem areas are not the place to spread the seed thin."

6

*a. Likelihood of Success on the Merits*

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C.A. § 1125(a)(1)(B). To establish a Lanham Act false advertising claim, a plaintiff must show that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002).

A finding of liability under the Lanham Act's false advertising provisions requires that "the contested statement or representation . . . be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *Id.* (quoting *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997)). In determining whether an advertisement is literally false, "a court must determine, first, the unambiguous claims made by the advertisement . . . , and second, whether those claims are false." *Id.* (citing *Scotts*, 315 F.3d at 274). "A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Id.* "Where the advertisement is literally false, a violation may be established without evidence of consumer

deception." *Id.* (quoting *Cashmere v. Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.2d 302, 311 (1st Cir. 2002)). Where, however, a plaintiff's theory of recovery is premised on a theory of implied falsity, "a plaintiff must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers." *Id.*

Whether Pennington's ads are literally false is debatable. On the one hand, Pennington's products do not contain twice the *number of seeds* as Scotts' grass seed. On the other hand, Pennington's evidence showed that its "twice the seed" claims are literally true on a *weight basis*, which Pennington claims is the industry standard to measure seed count. Thus, at a full trial in the case, Scotts may well not be able to conclude that Pennington's promotional materials are literally false.

Scotts, however, has produced a consumer survey showing that consumers think "twice the seed" refers to the number of seeds, not the weight. Arguably, the survey shows that, although literally true, Pennington's advertisements mislead potential purchasers.[8]

In short, Pennington's advertisements are both true and false, depending on the measure used. The consumer survey, however, makes a preliminary showing that consumers are misled by the Pennington ads. Although it is a close question, for the purposes of a preliminary injunction, the Court concludes that Scotts has shown that it is slightly more likely to prevail on this part of the merits.

But the falsity or misleading nature of Pennington's claims is not the only factor to consider in deciding whether Scotts is likely to prevail on the merits. The equitable doctrine of laches also figures in the equation. For unexplained reasons, Scotts waited until Pennington's

---

[8] At the evidentiary hearing, the evidence consisted exclusively of expert testimony about consumer confusion and the finer points of grass. Each party attacks the methodology and conclusions of the other's experts. The Court need not address the validity of the attacks in order to decide the motions for preliminary injunctions.

8

promotional materials had been public for over a year.[9] Laches is an equitable defense that denies relief to a party who delays asserting its rights to the detriment of the other party. *See Perry v. Judd*, 840 F. Supp. 2d 945, 950 (E.D.Va. 2012), *aff'd*, 471 Fed. App'x. 219, 224 (4th Cir. 2012). Laches is an affirmative defense to claims for equitable relief. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990), *cert. denied*, 501 U.S. 1260 (1991); *see Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980) ("The defendant must show: (1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted") (internal quotation marks and citations omitted), *cert. denied*, 449 U.S. 919 (1980). In essence, the doctrine "penalizes a litigant for negligent or willful failure to assert his rights." *Valmor Prods. Co. v. Standard Prods. Corp.*, 464 F.2d 200, 204 (1st Cir. 1972); *see Stoddard v. Quinn*, 593 F. Supp. 300, 308-09 (D. Me. 1984). Laches is a factor to consider carefully in granting preliminary relief. *See Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 100-01 (W.D. Va. 2007). Pennington has established a lengthy delay by Scotts, one that could result in a denial of relief, even if Scotts shows that Pennington's promotional materials are false or misleading.

In sum, at a full trial, either party could easily prevail on the merits. Given the standoff, this factor does not tip in Scotts' favor.

b. *Irreparable Harm*

Scotts has failed to prove that it will suffer irreparable harm in the absence of a preliminary injunction. In *PBM Prods.*, the Fourth Circuit refused to recognize a presumption of irreparable harm in the context of Lanham Act false advertising claims. Indeed, as Pennington notes, Scotts' "willingness to sit on its hands for more than 18 months without taking action

---

[9] It is undisputed that Scotts had been aware of the "twice the seed" campaign since October 2011.

regarding these claims" demonstrates that Scotts itself does not act as if it has suffered irreparable harm. (Pennington's Opp'n 25.)

The Court finds that Scotts has failed to make a necessary showing of irreparable harm. Based on the parties' own representations to the Court, most consumers purchase their products at the beginning of the spring grass seed season, and the grass season ends in May. Scotts cannot satisfy its burden of showing that irreparable harm will result absent preliminary injunctive relief. Indeed, by the time the Court heard argument on the motions and the matter was fully briefed before the Court, the need for urgency had been removed. Moreover, at this point, there is no reason that a full trial on the merits cannot be had prior to the time the parties' claims could again become crucial.

### c. *Balance of the Equities*

As discussed above, Scotts has failed to make a necessary showing of irreparable harm. Moreover, the instant matters before the Court evidence the sort of tit-for-tat litigation strategy which the parties seem to employ. Considering the course the Court has seen charted in the instant cases, the Court hardly finds difficulty in concluding that each party's hands appear slightly soiled, which weighs against injunctive relief. The Court, therefore, finds that Scotts has failed to show that the balance of the equities tips in its favor.

### d. *Public Interest*

The public interest is undoubtedly served by a marketplace free of consumer confusion as to the nature, quality, and characteristics of companies' products. Here, although Pennington's claims are likely to possibly arouse at least some consumer confusion as to nature of its grass seed products compared to Scotts', Scotts has not made a clear showing that Pennington's claims—some of which include "no filler" language and reference product labeling which

describes seed count in terms of weight—is likely to substantially cause consumer confusion such that the public interest factor decidedly tips in Scotts' favor.

* * *

Because the Court finds that Scotts fails to make a satisfactory showing of each of the preliminary injunction factors, the Court denies Scotts' motion for preliminary injunction.

### III. PENNINGTON'S MOTION FOR A PRELIMINARY INJUNCTION

#### A. Factual Background

Pennington's Motion for Preliminary Injunction concerns Pennington's 1 Step Complete and Scotts' EZ Seed combination grass seed products. Pennington alleges that "[o]n the cusp of spring grass seed season . . . Scotts . . . beg[an] to engage in a comprehensive national smear campaign consisting of false representations about Pennington's 1 Step Complete on television, . . . online, in print at the point-of-sale, and on the radio." (Pennington's Mem. Supp. Mot. Prelim. Inj. ("Pennington's Mem. Supp.") 5.) More specifically, Pennington claims that on or about March 1, 2012, Scotts began airing a 30-second national commercial advertisement (the "Commercial") promoting Scotts' EZ Seed over Pennington's 1 Step Complete. Pennington describes the Commercial as follows:

> The Commercial opens with a dog sitting on a brown, torn-apart patch of grass while barking up at two male actors. One of the actors is holding a bottle of EZ Seed while the other is holding a bottle of 1 Step Complete. The Commercial clearly and unmistakably identifies the packaging and labels for both products. The actor holding the bottle of 1 Step Complete tells the other actor that he is "just about to use" the product to repair the unsightly patch of grass upon which his barking dog sits. As the actor pours Pennington's 1 Step Complete into his hand, the actor holding EZ Seed states, in reference to 1 Step Complete, "that's a bunch of ground-up paper." The bottle of 1 Step Complete, and its mulch seed, remain in plain view during this disparaging and untrue statement.
>
> Immediately after calling 1 Step Complete "a bunch of ground-up paper," the Commercial focuses on Scotts' product, with the actor holding up the bottle of EZ Seed, unscrewing its cap, and stating: "Scotts' EZ Seed uses the finest seed,

> fertilizer, and natural mulch that absorbs and holds water better than paper can." As the actor states that EZ Seed "absorbs and holds water better than paper can," the Commercial shows close-up images of EZ Seed being sprinkled over a brown patch of grass to demonstrate the product's purported ability to absorb water.
>
> To show the composition of EZ Seed's mixture, the Commercial zooms into the soil and offers viewers a close-up image of the seeds and mulch mixed together with the fertilizer. The Commercial flashes to 21 days later, and shows a green and fully established patch of grass at the actors' feet, with the actor previously planning to use 1 Step Complete saying, "EZ Seed really works."

(Pennington's Mem. Supp. 9-10 (internal citation omitted).) Scotts also has a radio advertisement similar to its Commercial which makes the claim that "the ground up paper in Pennington Complete" "just can't match Scotts' EZ [S]eed." (Pennington's Mem. Supp. 10.)

Pennington also alleges that:

> Scotts runs an advertisement on its website with a side-by-side comparison of EZ Seed and 1 Step Complete. Entitled "You Be The Judge . . . .," this comparison identifies nine purported advantages of EZ Seed over 1 Step Complete and includes checks beside each point to indicate superiority. Among the false superiority claims made in the Internet Advertisement are that EZ seed retains more than four times as much water as 1 Step Complete. The second page of the advertisement claims that EZ Seed "outperforms" 1 Step Complete in a "torture test," and shows a pictorial timeline purportedly comparing grass growth between the products at 7 days, 13 days, 17 days, and 32 days after planting.

(Pennington's Mem. Supp. 10 (internal citations omitted).) Pennington argues that Scotts' Internet Advertisement contains several false and misleading claims "regarding the quality, nature, and characteristics of 1 Step Complete as compared to EZ Seed." (Pennington's Mem. Supp. 18.) Pennington also attacks the reliability of Scotts' testing, claiming that "Scotts admittedly utilized an outdated version of Pennington's 1 Step Complete product which contained a different composition of mulch." (Pennington's Mem. Supp. 11.)

Finally, Pennington complains about in-store advertisements (the "In-Store Advertisement") disseminated by Scotts that, according to Pennington, "further disparage[] 1

Step Complete." (Pennington's Mem. Supp. 21.) According to Pennington, Scotts' In-Store Advertisement:

> includes a large display sign with the EZ Seed name at the top followed by the statement: "REVOLUTIONARY GROWING MATERIAL OUTPERFORMS PAPER MULCH." Underneath this tagline, it shows a visual of two piles of mulch, one identified as "Old Technology Ground-Up Paper," and the other as "EZ Seed Super Absorbent Growing Material." Scotts' In-Store Advertisement also repeats the same false claims from the Internet Advertisement that EZ Seed retains water more than four times long longer than 1 Step Complete.

(Pennington's Mem. Supp. 12 (internal citation omitted).) Pennington argues that Scotts' In-Store Advertisement claims are false and misleading, and "[l]ike the Internet Advertisement, . . . are based on testing of an older version of Pennington's product and utilized flawed testing methods." (Pennington's Mem. Supp. 12.)

In sum, Pennington claims that Scotts' advertisements "leave consumers with the distinctly false impressions that 1 Step Complete is an inferior and ineffective product in comparison to EZ Seed and that 1 Step Complete is a product comprised entirely of 'ground-up paper.'" (Pennington's Mem. Supp. 6.) Pennington argues that such advertisements convey a literally false and misleading message to consumers and therefore should be enjoined.

**B. Discussion**

*1. Likelihood of Success on the Merits*

a. "A bunch of ground-up paper"

Pennington argues that it has a likelihood of success for the following reasons: (1) Scotts' claim that 1 Step Complete is "a bunch of ground of paper" is literally false because Scotts' claim misrepresents 1 Step Complete's actual composition, which undisputedly consists of a combination of mulch, grass seed, and fertilizer; and (2) Scotts' claim is highly misleading and deceives a substantial number of consumers as established by Pennington's consumer survey.

13

The Court finds that Pennington has failed to show a likelihood of success on the merits with respect to Scotts' "a bunch of ground-up paper" claim. First, Pennington has failed to show that Scotts' claim is literally false. As a threshold matter, it is undisputed that the mulch component in 1 Step Complete contains paper. Indeed, Scotts has set forth evidence of visible newsprint in 1 Step Complete (in both the old and new formulations) which Pennington does not dispute. Pennington's argues, however, that Scotts' claim unambiguously conveys the message that 1 Step Complete is comprised entirely of ground-up paper.

As the Court stated from the bench during the May 14 hearing, it can hardly be argued that a reasonable consumer seeking to purchase a grass seed product would understand Scotts' claim to convey the message that Pennington's 1 Step Complete is comprised entirely of "a bunch of ground-up paper." Rather, reasonable consumers could and would readily understand that ground-up paper is significantly different than a combination grass seed product. Furthermore, even assuming that Pennington's consumer survey used reliable and valid survey methodology, the survey does not support the argument Pennington advances: that Scotts' Commercial deceives consumers into believing that 1 Step Complete is made entirely of a bunch of ground-up paper. Thus, Pennington fails to show evidence of consumer confusion and has failed to show a likelihood of success on Scotts' "a bunch of ground-up paper" claim.

b. Superiority claims

Pennington also argues that Scotts' establishment or "tests show" claims relied on flawed testing, thereby rendering such claims unreliable. A party satisfies its burden of showing that an establishment claim is literally false by demonstrating that the tests upon which the claim relies do not support the proposition for which it was cited or that the tests were not sufficiently reliable to substantiate the claim. *See C.B. Fleet Co.*, 131 F.3d at 435 (citing *Castrol, Inc. v.*

*Quaker State Corp.*, 977 F.2d 57, 62-63 (2d Cir. 1992)). Rather than merely showing that the test results are "unpersuasive," the party must show that the "tests are 'not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made." *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1138 (4th Cir. 1993) (internal quotation marks omitted).

Scotts primarily relies upon testing done by its research specialist, Michael Faust, as the basis for its EZ Seed superiority claims with respect to its germination and seedling establishment and water absorption and retention claims compared to 1 Step Complete. The Court heard extensive testimony from Faust during the May 14 hearing, during which Pennington attempted to cast substantial doubt on the reliability of Scotts' testing. After considering the parties' briefs and oral argument set forth on the instant motions, the Court's preliminary assessment of Scotts' testing leads the Court to conclude that Scotts' testing reasonably supports its establishment claims. The Court further finds that Pennington has not demonstrated that Scotts' testing is not sufficiently reliable to substantiate the superiority claims at issue.[10] The Court, therefore, finds that Pennington has failed to make a satisfactory showing of its likelihood of success on the merits with respect to Scotts' establishment claims.

### 2. Irreparable Harm

Pennington's claim of irreparable harm presupposes that Scotts' claims are false and misleading and are, therefore, likely to substantially harm Pennington's sales, reputation, and goodwill. Because Pennington has failed to make such a showing, Pennington cannot establish that it will suffer irreparable harm. Accordingly, and for substantially the same reasons discussed above, Pennington cannot make a clear showing that it is likely to be irreparably harmed absent

---

[10] Although the vast majority of Scotts' testing compared EZ Seed to a 1 Step Complete formulation that Pennington claims to no longer manufacture or sell, the Court is not convinced that the products readily available to consumers are not Pennington's previously manufactured formula or that Scotts' testing is not also reliable with respect to Pennington's new formulation.

preliminary relief.

### 3. Balance of the Equities

Pennington also argues that the balance of the equities tips in its favor. Essentially, Pennington contends that it will suffer substantial irreparable harm to its sales, reputation, and goodwill from Scotts' false promotional campaigns, and that Scotts should not continue to profit from its unlawful conduct. The Court agrees that allowing false and misleading claims to permeate the market ordinarily leads to the conclusion that the balance of the equities weigh against the party responsible for such claims. Here, however, because the Court has found no such claims to exist, and for the reasons stated above, Pennington has failed to show that the balance of the equities tips in its favor.

### 4. Public Interest

Pennington's argument that the public interest factor weighs in its favor again presupposes the existence of false or misleading claims. Because the Court finds that Pennington has failed to show that Scotts' claims are literally false or misleading, or likely to lead to consumer confusion, Pennington has failed to show that the public interest factor weighs in its favor.

* * *

In conclusion, Pennington has failed to make a satisfactory showing that the injunctive relief it now seeks is warranted. Accordingly, the Court concludes that both motions for preliminary injunction should be denied.

## IV. PENNINGTON'S MOTIONS TO STRIKE

Roughly a week before the preliminary injunction hearing, Scotts made supplemental

filings, which included not only the consumer survey report in support of its motion for a preliminary injunction, but also Scotts' rebuttal expert report to Pennington's survey. Pennington moved to strike the reports primarily on the basis that the reports had not been previously disclosed to Pennington, which made it difficult for Pennington to sufficiently rebut the reports. Pennington raised its motions to strike at the hearing to which the Court responded that it would hear the testimony and consider the reports. Thus, to the extent it is not already clear, Pennington's motions to strike are denied.

V. CONCLUSION

For the reasons explained above, the Court DENIES the motions for preliminary injunction motion and the motions to strike.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

/s/
John A. Gibney, Jr.
United States District Judge

ENTERED this 30 day of November 2012.